UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHELBY LEE PATTERSON, | ) |
| Plaintiff(s), | ) |
| vs. | ) Case No. 4:06CV556 JCH |
| EFPP, LLC, | ) |
| Defendant(s). | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant EFPP, LLC's Motion for Summary Judgment, filed June 1, 2007. (Doc. No. 67). The matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Shelby Lee Patterson, a Moorish-American[1] male, was hired by Coldstor, LLC ("Coldstor"), on December 3, 2004, as an Order Selector. (Defendant's Statement of Uncontroverted Material Facts ("Defendant's Facts"), ¶ 2). Coldstor is a subsidiary of The Arthur Wells Group (the "Company"). (Id., ¶ 3). Plaintiff's first day of work for which he was paid at Coldstor was December 5, 2004, and his starting rate of pay was $10.75 per hour. (Id., ¶¶ 4, 5).

On January 10, 2005, because Coldstor was reducing its staff following the holiday season, Plaintiff was offered the opportunity to transfer to another Arthur Wells Group subsidiary, EFPP, LLC/Park 370 ("Park 370"). (Defendant's Facts, ¶ 6). Plaintiff elected to accept the position at Park 370, at the starting rate of $10.00 per hour, rather than be laid off from Coldstor.[2] (Id., ¶¶ 6-7, citing

---

[1] See Plaintiff's Statement of Uncontroverted Material Facts in Response to Defendant's Motion for Summary Judgment ("Plaintiff's Facts"), ¶ 1).

[2] Plaintiff testified that he knew he would not be paid as much at Park 370. (Plaintiff's Deposition, attached to Defendant's Motion for Summary Judgment as Exh. B, P. 33).

Plaintiff's Dep., P. 44). The typical starting salary at Park 370 was $9.50 per hour, but Plaintiff was offered $10.00 because he was transferring from a higher paying facility. (Id., ¶ 9).[3] Plaintiff thus was paid more during his probationary period at Park 370 than other starting workers at that facility. (Id., ¶ 31).

Employees of all Arthur Wells Group subsidiaries are subject to a ninety day probationary period. (Defendant's Facts, ¶ 10). Although Plaintiff's probationary period ended on or about March 6, 2005, he initially was not granted a pay raise on that date, because there was some confusion on the part of his supervisor regarding whether his probationary period started anew when he transferred to Park 370. (Id., ¶¶ 12, 13). Plaintiff contacted Ms. Lisa Baker, Director of Human Resources at The Arthur Wells Group, who informed Plaintiff his probationary period ran from his time at Coldstor. (Id., ¶ 14). Ms. Baker stated she would take care of the problem, and Plaintiff retroactively was granted a pay raise to $10.50 per hour, effective March 6, 2005. (Id., ¶¶ 14, 15, citing Plaintiff's Dep., PP. 76, 78).

During his tenure at Park 370, Plaintiff applied for the position of night shift forklift operator. (Defendant's Facts, ¶ 16). Plaintiff was granted the position on or about April 3, 2005, and received a raise to $11.00 per hour, a rate of pay consistent with that given other beginning forklift operators. (Id., ¶¶ 16, 17). Plaintiff's supervisor again believed Plaintiff was subject to a new ninety day probationary period, but Plaintiff brought the issue to Ms. Baker's attention, and received pay at the rate of $11.00 per hour, starting on April 3, 2005. (Id., ¶¶ 18, 19, citing Plaintiff's Dep., P. 64).

Both Coldstor and Park 370 utilize a point system in conjunction with their attendance policies. (Defendant's Facts, ¶ 20). Pursuant to the Company's No-Fault Absenteeism and Lateness

---

[3] Park 370 had a lower starting salary than Coldstor because it was a dry warehouse, rather than a refrigerated facility like Coldstor. (Defendant's Facts, ¶ 8).

Policy, each occurrence of absenteeism or leaving work early counts as one point. (Id., ¶ 21). When an employee accumulates a total of twelve points in any 365-day period (or less), he or she is subject to termination of his or her employment. (Id., ¶ 22).[4]

Between March 8, 2005, and June 3, 2005, Plaintiff accumulated twelve attendance points. (Defendant's Facts, ¶ 23). Plaintiff thus was terminated from his employment with EFPP, LLC/Park 370 on June 6, 2005, pursuant to Company policy. (Id., ¶ 24).[5]

On July 11, 2005, Plaintiff filed a charge with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission, alleging race discrimination. (Second Amended Complaint ("Complaint" or "Compl."), Doc. No. 23, attached Exh. 1). After receiving his Notice of Right to Sue (Compl., ¶ 5), Plaintiff filed the instant suit on April 3, 2006. Plaintiff's Second Amended Complaint in this matter, filed July 17, 2006, consists of six counts, as follows: Racial Discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") (Count I); Racial Discrimination and Retaliation, in violation of 42 U.S.C. § 1981 (Count II); Breach of Contract (Count III); Outrageous Conduct (Count IV); Negligent Infliction of Emotional Distress (Count V); and Intentional Infliction of Emotional Distress (Count VI). (Id., ¶¶ 18-56). As stated above, Defendant filed the instant Motion for Summary Judgment on June 1, 2007, maintaining there exist no genuine issues of material fact, and thus Defendant is entitled to judgment as a matter of law on all counts of Plaintiff's Second Amended Complaint. (Doc. No. 67).

---

[4] Plaintiff was aware of the Company's attendance policy during his tenure at Park 370. (Defendant's Facts, ¶ 34, citing Plaintiff's Dep., PP. 173-176).

[5] Plaintiff admits that he was absent on the days in which he accumulated points pursuant to Company policy. (Defendant's Facts, ¶ 33). He maintains he should not have accumulated a full twelve points, however, because his four day absence related to "car trouble," on May 24, 25, 27, and 31, 2005, should have counted as only one absence. (Id., ¶ 47). Under Company policy, however, Park 370 considers each day off for car trouble to be a separate occurrence. (Id., ¶ 48).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Racial Discrimination

As stated above, in his Second Amended Complaint Plaintiff alleges unlawful discrimination on the basis of race, in violation of both Title VII and 42 U.S.C. § 1981. (Compl., ¶¶ 15-28).

Because he lacks direct evidence of discrimination[6], Plaintiff's claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06, 93 S.Ct. 1817, 1823-26, 36 L.Ed.2d 668 (1973). See Gilmore v. AT & T, 319 F.3d 1042, 1046 (8th Cir.), cert. denied, 540 U.S. 955 (2003); Sherman v. Runyon, 235 F.3d 406, 409 (8th Cir. 2000); Roark v. City of Hazen, Ark., 189 F.3d 758, 761 (8th Cir. 1999) (holding Section 1981 claims of race discrimination are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green as well). Under this framework, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Twymon v. Wells Fargo & Co., 462 F.3d 925, 934 (8th Cir. 2006). In order to present a prima facie case of race discrimination, Plaintiff must show: "(1) that he is a member of a protected class, (2) that he was meeting the employer's legitimate job expectations, (3) that he suffered an adverse employment action, and (4) that similarly situated employees outside the protected class were treated differently." Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004), citing Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000).

If Plaintiff is successful in establishing the prima facie case, a rebuttable presumption of discrimination arises; the burden then shifts to Defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997) (citation omitted); see also Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810 (8th Cir. 2005). Once Defendant articulates such a reason, the presumption of

---

[6] Plaintiff admits he never was told he was transferred to Park 370 from Coldstor due to his race; to the contrary, he believed he was transferred rather than laid off because he was a good worker. (See Defendant's Facts, ¶¶ 28, 29, citing Plaintiff's Dep., PP. 30-31). Further, Plaintiff specifically testified both that he never was told his termination was due to his race, and that he believed the mistakes made with respect to his pay were accidental, rather than racially motivated. (Id., ¶¶ 30, 32, citing Plaintiff's Dep., PP. 88-89, 129).

discrimination disappears, and Plaintiff must prove that Defendant's proffered reason is merely a pretext for discrimination. Tolen, 377 F.3d at 882 (citation omitted).

In his Complaint, Plaintiff alleges he was subject to several instances of race discrimination in the terms and conditions of his employment. The Court will address Plaintiff's allegations in turn.

### A. Termination

In his Second Amended Complaint, Plaintiff first complains the discipline he received, culminating in the termination of his employment, was more severe than that imposed on white employees committing the same infractions. (Compl., ¶¶ 15(b), 18-28). Upon consideration, however, the Court finds that with this allegation, Plaintiff fails to establish the fourth element of his prima facie case of race discrimination, i.e., that similarly situated employees not in the protected group were treated differently.

Under Eighth Circuit law, "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 852 (8th Cir. 2005) (citation omitted). Under this low-threshold standard, Plaintiff must show only that he and a similarly situated employee outside the protected class were, "involved in or accused of the same or similar conduct and [were] disciplined in different ways." Id. (internal quotations and citations omitted).

In his response to Defendant's Statement of Uncontroverted Facts, Plaintiff identifies the following employees whom he claims were similarly situated: Leonard Boyer; Daniel Buffa; Russell De Maria; Charles Duncan, Jr.; Paul Mudd; Andy S. Post; Keith Zeigler; Scott E. Zeigler; Randy E. Bailey; Robert A. Bright; Stephanie Hardy; and Patrick Sanders. (Plaintiff's Facts, ¶ 5). Plaintiff offers absolutely no details regarding these employees and their alleged infractions, however, and thus cannot establish they were involved in or accused of the same or similar conduct, but disciplined in different ways. Rodgers, 417 F.3d at 852. Plaintiff thus fails to establish a prima facie case of race

discrimination with respect to his termination, and so Defendant's Motion for Summary Judgment on this point must be granted.[7]

Even assuming Plaintiff had presented a prima facie case, the Court finds Plaintiff's claim nevertheless fails under McDonnell Douglas. With respect to Defendant's burden, the Eighth Circuit has explained the standard for rebuttal of Plaintiff's prima facie case as follows:

> This burden is not onerous, and the explanation need not be demonstrated by a preponderance. The defendant need not persuade the court that it was actually motivated by the proffered reasons. Rather, it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against plaintiff that would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. If the defendant offers a facially nondiscriminatory explanation, regardless of its persuasiveness, the presumption in plaintiff's favor evaporates and it is left for the trier of fact to determine whether the plaintiff has proven that the defendant's action was motivated by discrimination.

McCullough v. Real Foods, Inc., 140 F.3d 1123, 1127 (8th Cir. 1998) (internal quotations and citations omitted).

In the instant case, Defendant asserts, "Plaintiff was terminated from his position at Park 370 for an accumulation of twelve (12) attendance points pursuant to the Company's attendance policy, and not because he is [Moorish]-American." (Defendant EFPP LLC's Memorandum in Support of Motion for Summary Judgment ("Defendant's Memo in Support"), P. 6). Specifically, Defendant notes that, as stated above, pursuant to the Company's No-Fault Absenteeism and Lateness Policy each occurrence of absenteeism or leaving work early counts as one point, and when an employee accumulates a total of twelve points in any 365-day period (or less), he or she is subject to termination of his or her employment. (Id., PP. 6-7). Plaintiff admits that he was absent on the days

---

[7] The only employee about whom Plaintiff submits any employment information is Adam S. Higby. (See Defendant's Exh. 114, attached to Plaintiff's Response to Defendant EFPP, LLC's Motion for Summary Judgment ("Plaintiff's Response")). Mr. Higby also was terminated from his employment with Defendant for absenteeism, however, and thus cannot provide the proof of disparate treatment necessary to sustain Plaintiff's prima facie case.

in which he accumulated points, and that he was aware of the Company's attendance policy during the time he was employed at Park 370. (Id., P. 7). Thus, because Plaintiff accumulated twelve attendance points between March 8, 2005, and June 3, 2005, he was terminated according to Company policy. (Id.). The Court finds that with these assertions, Defendant presents a legitimate, nondiscriminatory reason for its adverse employment action.[8]

Because Defendant has met its burden of rebutting Plaintiff's prima facie case, the burden then shifts to Plaintiff to establish a genuine controversy concerning intentional discrimination. Plaintiff may do so by demonstrating disparate treatment, but under Eighth Circuit law, "[a]t the pretext stage of the *McDonnell Douglas* burden-shifting framework, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." Rodgers, 417 F.3d at 853 (citations omitted). Thus, Plaintiff must show that he and the employees outside his protected group were, "similarly situated in all relevant respects." Id. (citation omitted).

Upon consideration, the Court finds Plaintiff fails to present evidence tending to demonstrate that Defendant's legitimate, non-discriminatory explanation for its action was merely a pretext for discrimination. Rather, in his response to Defendant's Statement of Uncontroverted Facts, Plaintiff admits that white employees who accumulated twelve attendance points within a 365-day period were terminated from Park 370 pursuant to Company policy as well. (See Plaintiff's Facts, ¶ 50).

---

[8] As stated above, Plaintiff maintains he should not have accumulated a full twelve points, because his four day absence related to "car trouble," on May 24, 25, 27, and 31, 2005, should have counted as only one absence. (Defendant's Memo in Support, P. 7). It is undisputed, however, that Park 370 does not consider consecutive days off for car trouble as a single absence, but rather considers each day to be a separate occurrence. (Id.; see also Plaintiff's Response, P. 13 ("Plaintiff is aware that all 4 (four) days of car trouble on May 24th, May 25th, May 27th, May 31, 2005 and understands they are separate occurrences..."). Further, while Plaintiff alleges that prior to being terminated, he should have received a three-day suspension without pay upon the accumulation of eleven points, Defendant notes it was unable to impose the suspension, because Plaintiff was immediately absent following the accumulation of his eleventh point. (Defendant's Memo in Support, PP. 7-8).

Plaintiff's own evidence thus supports Defendant's assertion that its decision to terminate Plaintiff was based on something other than race, and so Defendant's Motion for Summary Judgment on this point must be granted.

**B.      Failure To Promote**

In his Second Amended Complaint, Plaintiff further complains he, "was denied the opportunity to fill a position for which [he] was qualified and had received [his] supervisor's approval." (Compl., ¶ 15(c)). Plaintiff does not specify the position at issue. In response to Plaintiff's claim, Defendant notes that during the six months he was employed with Coldstor and Park 370, Plaintiff was granted a higher paying position for which he applied, that of night shift forklift operator. (Defendant's Memo in Support, P. 8). Further, Defendant asserts without contradiction that Plaintiff applied for no other positions with Defendant. (Id.). Plaintiff's claim of race discrimination on the basis of denied promotions thus must fail, as during his tenure with Defendant Plaintiff was never denied opportunities for which he applied. See Austin v. Minnesota Min. and Mfg. Co., 193 F.3d 992, 995 (8th Cir. 1999) (elements of failure to promote claim include employee was qualified *and applied for* a promotion). Defendant's Motion for Summary Judgment on this point will therefore be granted.

**C.      Pay Differential**

Plaintiff next complains he received less pay than white employees with less experience, qualifications, and/or seniority, performing the same job duties. (Compl., ¶ 15(d)). Once again, the Court finds that with this allegation, Plaintiff fails to present a prima facie case of race discrimination, as he cannot demonstrate that similarly situated employees not in the protected group were treated differently. Rather, as noted above, while Plaintiff identifies allegedly similarly situated white employees by name (see Plaintiff's Facts, ¶ 5), he offers absolutely no details regarding the

employees, and thus cannot establish they were similarly situated to Plaintiff in any meaningful way. Plaintiff thus fails to establish a prima facie case of race discrimination with respect to the alleged pay differential, and so Defendant's Motion for Summary Judgment must be granted.[9]

## II. **Retaliation**

In Count II of his Second Amended Complaint, Plaintiff alleges he was retaliated against, in violation of 42 U.S.C. § 1981. (Compl., ¶¶ 24-28). Under Eighth Circuit law, "[t]o establish a prima facie case of retaliation under 42 U.S.C. § 1981, [Plaintiff] must show that he 'engaged in statutorily protected activity,' that [Defendant] 'took adverse employment action against him,' and that 'there is a causal connection between the two events.'" McClure v. Career Systems Development Corp., 447 F.3d 1133, 1137 (8th Cir. 2006), quoting Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 760 (8th Cir. 2004).

Upon consideration, the Court finds that Plaintiff fails to establish a prima facie case of retaliatory discrimination, because he admittedly made no complaints related to race discrimination, or any other form of discrimination actionable under Title VII. (See Defendant's Facts, ¶ 57, citing Plaintiff's Dep., PP. 127-129). Plaintiff thus did not engage in statutorily protected activity, and so his claim of retaliation must fail. Defendant's Motion for Summary Judgment on this point will therefore be granted.

## III. **Breach Of Contract**

In Count III of his Second Amended Complaint, Plaintiff alleges Breach of Contract. (Compl., ¶¶ 29-38). Under Missouri law, in order to recover on a claim for breach of contract,

---

[9] As further support for its ruling, the Court notes that in its Motion for Summary Judgment, Defendant submits evidence that not only was Plaintiff's salary consistent with the range for his various positions, but at times he was actually paid more than similarly situated employees. (Defendant's Memo in Support, P. 9).

Plaintiff must plead the following elements: "(1) the existence of an enforceable contract between the parties to the action; (2) mutual obligations arising under its terms; (3) the party being sued failed to perform obligations imposed by the contract; and (4) the party seeking recovery was thereby damaged." Jackson v. Williams, Robinson, White & Rigler, P.C., 2007 WL 2164873 at *2 (Mo. App. Jul. 30, 2007), citing Superior Ins. Co. v. Universal Underwriters Ins. Co., 62 S.W.3d 110, 118 (Mo. App. 2001).

Upon consideration, the Court finds Defendant is entitled to summary judgment on Plaintiff's breach of contract claim, because Plaintiff fails to establish the existence of an enforceable contract with Defendant. In other words, although Plaintiff repeatedly asserts he entered into a contract with Defendant, he offers no evidence of the contract, other than his own conclusory allegations.[10] The non-existence of a contract is fatal to Plaintiff's claim, and so Defendant's Motion for Summary Judgment on this point must be granted.

## IV.   Outrageous Conduct

In Count IV of his Second Amended Complaint, Plaintiff makes a claim for outrageous conduct. (Compl., ¶ 39-44). Under Missouri law, "[i]n order to state a cause of action for outrageous conduct, a plaintiff must allege that the defendant by extreme and outrageous conduct, beyond all bounds of decency intentionally or recklessly caused severe emotional distress to the plaintiff *from which bodily harm result[ed].*" Williams v. Blumer, 763 S.W.2d 242, 248 (Mo. App. 1988) (emphasis in original) (internal quotations and citations omitted). See also Hanks v. General Motors Corp., 906 F.2d 341, 343 (8th Cir. 1990) (same).

---

[10] Due to Plaintiff's lack of evidence, even the terms of the alleged contract are unclear to the Court.

Upon consideration, the Court finds Plaintiff cannot establish Defendant engaged in extreme or outrageous conduct, because as noted above, Defendant neither racially discriminated nor retaliated against Plaintiff, nor breached an employment contract it entered into with Plaintiff. Summary judgment on Count IV thus is appropriate and will be granted.[11]

## V. <u>Negligent Infliction Of Emotional Distress</u>

In Count V of his Second Amended Complaint, Plaintiff alleges that Defendant negligently inflicted emotional distress upon him. (Compl., ¶¶ 45-50). "The tort of negligent infliction of emotional distress is a negligence action." <u>Hutchinson v. DaimlerChrysler Corp.</u>, 2007 WL 1726537 at *19 (E.D. Mo. Jun. 14, 2007) (internal quotations and citations omitted). Under Missouri law, "[t]he general elements of a negligence action are 1) a legal duty of the defendant to protect the plaintiff from injury, 2) breach of the duty, 3) proximate cause, and 4) injury to the plaintiff." <u>Thornburg v. Federal Express Corp.</u>, 62 S.W.3d 421, 427 (Mo. App. 2001) (citation omitted).

> Claims seeking recovery of damages for the negligent infliction of emotional distress require proof of two additional elements: 1) that the defendant should have realized that his conduct involved an unreasonable risk of causing distress, and 2) that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant.

<u>Hutchinson</u>, 2007 WL 1726537 at *19 (internal quotations and citation omitted).

Upon consideration, the Court finds Plaintiff fails to establish a claim for negligent infliction of emotional distress. Specifically, the Court finds that because Plaintiff failed to prove the underlying conduct he alleges, i.e., race discrimination, retaliation, or breach of contract, he can show neither that Defendant breached its duty to protect Plaintiff, nor that Defendant should have realized its

---

[11] In light of the Court's above ruling, it need not address Defendant's assertion that Plaintiff offers no evidence of a medically diagnosable bodily harm or injury. (<u>See</u> Defendant's Memo in Support, P. 13).

conduct involved an unreasonable risk of causing distress to Plaintiff. Defendant's Motion for Summary Judgment on Count V of Plaintiff's Second Amended Complaint must therefore be granted.

## VI. Intentional Infliction Of Emotional Distress

"The elements of the tort of intentional infliction of emotional distress in Missouri are that (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted in an intentional or reckless manner; and (3) the defendant's conduct caused severe emotional distress that resulted in bodily harm." Hutchinson, 2007 WL 1726537 at *18 (citation omitted). "Liability has been found only where the conduct has been 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Id., quoting Warrem v. Parrish, 436 S.W.2d 670, 673 (Mo. 1969).

Upon consideration, the Court finds Plaintiff fails to establish a claim for intentional infliction of emotional distress. Again, the Court finds that because Plaintiff failed to prove the underlying conduct he alleges, i.e., race discrimination, retaliation, or breach of contract, he can show neither that Defendant's conduct was extreme and outrageous, nor that Defendant acted in an intentional or reckless manner. Defendant's Motion for Summary Judgment on Count VI of Plaintiff's Second Amended Complaint must therefore be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant EFPP, LLC's Motion for Summary Judgment (Doc. No. 67) is **GRANTED**, and Plaintiff's claims are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 30th day of August, 2007.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE